Hala v Orange Regional Med. Ctr. (2019 NY Slip Op 07387)





Hala v Orange Regional Med. Ctr.


2019 NY Slip Op 07387


Decided on October 16, 2019


Appellate Division, Second Department


Duffy, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 16, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
COLLEEN D. DUFFY
HECTOR D. LASALLE
ANGELA G. IANNACCI, JJ.


2018-05465
 (Index No. 3221/14)

[*1]Veronica Hala, et al., plaintiffs-respondents,
v
Orange Regional Medical Center, defendant- respondent, Barbara Spreitzer, FNP, et al., appellants, et al., defendant; Terry H. Winter, et al., nonparty-respondents.



APPEAL by the defendants Barbara Spreitzer, FNP, and Horizon Medical Group, P.C., in an action, inter alia, to recover damages for medical malpractice, from an order of the Supreme Court (Lewis J. Lubell, J.), dated April 23, 2018, and entered in Orange County. The order, insofar as appealed from, denied the motion of the defendants Barbara Spreitzer, FNP, and Horizon Medical Group, P.C., to grant full faith and credit to an order of the South Carolina Court of Common Pleas, Fifth Judicial Circuit (L. Casey Manning, J.), entered September 21, 2017, which, inter alia, purports to permanently stay this and other actions pending in the courts of New York State.



 Feldman, Kleidman, Coffey, Sappe & Regenbaum, LLP, Fishkill, NY (Marsha S. Weiss of counsel), and Vogrin & Frimet, LLP, New York, NY (Francine L. Semaya of counsel), for appellants (one brief filed).
 Wingate, Russotti, Shapiro & Halperin, LLP, New York, NY (Kathleen P. Kettles of counsel), for plaintiffs-respondents.



DUFFY, J.

OPINION & ORDER
At issue on this appeal is whether the Supreme Court properly declined to grant full faith and credit to an order of the South Carolina Court of Common Pleas, Fifth Judicial Circuit (L. Casey Manning, J.) (hereinafter the South Carolina court), entered September 21, 2017 (hereinafter the South Carolina order), pursuant to the Uniform Insurers Liquidation Act (hereinafter the UILA), which provides a uniform system for the equitable distribution of assets and liabilities of defunct multistate insurers. The South Carolina order, inter alia, purports to permanently stay this and other actions by New York plaintiffs against defendants who are policyholders of insurance liability coverage provided by the Oceanus Insurance Company, RPG (hereinafter Oceanus). Oceanus is a risk retention group created pursuant to the federal Liability Risk Retention Act (hereinafter LRRA) (see 15 USC § 3901 et seq.), and organized and licensed in South Carolina. Both New York and South Carolina have adopted versions of the UILA.
The defendants Barbara Spreitzer, FNP, and Horizon Medical Group, P.C. (hereinafter Horizon, and hereinafter together the appellants), moved in the Supreme Court, asking it to accord full faith and credit and interstate comity to the South Carolina order and to permanently stay this action. In the order appealed from, dated April 23, 2018, the Supreme Court, inter alia, denied the appellants' motion.
Notwithstanding the goals of the UILA, for the reasons set forth herein, the principles of due process and the right of the plaintiffs to seek redress in the courts in New York for wrongs they allege occurred in New York mandate that the South Carolina order is not entitled to full faith and credit or comity by the courts in New York in this and the related actions. We therefore affirm the order insofar as appealed from.
Background of this Action
In April 2014, the plaintiff Veronica Hala (hereinafter the plaintiff) and her husband Keith Hala (hereinafter together the plaintiffs) commenced this action in the Supreme Court, Orange County, against the appellants and the defendants Orange Regional Medical Center (hereinafter Orange) and Joseph L. Racanelli (hereinafter collectively the defendants), seeking damages for injuries the plaintiffs allege arose from medical malpractice committed by the defendants in failing to timely diagnose the plaintiff's breast cancer. In January 2017, after the completion of discovery, the plaintiffs filed a note of issue. During the course of discovery, the defendants Racanelli, Spreitzer, and Horizon disclosed that they were insured by Oceanus. Orange is insured by a different medical malpractice insurance company. Neither Oceanus nor Orange's insurance provider is a party to this action.
Thereafter, Orange and Racanelli moved, and the appellants separately moved, for summary judgment. By order dated August 2, 2017 (hereinafter the summary judgment order), the Supreme Court granted those branches of the motion of Orange and Racanelli which were for summary judgment dismissing the causes of action asserted against them alleging lack of informed consent and medical malpractice as to the plaintiff's January 9, 2012, visit to those defendants. The summary judgment order also granted those branches of the appellants' motion which were for summary judgment dismissing the cause of action asserted against Horizon alleging negligent hiring and supervision and the cause of action asserted against Spreitzer and Horizon pertaining to Spreitzer's treatment of the plaintiff for Fifth's Disease. The Supreme Court denied that branch of the motion of Racanelli and Orange which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against them with respect to interpreting the plaintiff's January 9, 2012, ultrasound, and denied those branches of the appellants' motion which were for summary judgment dismissing the cause of action alleging that they failed to refer the plaintiff to a breast surgeon.[FN1]
A pretrial conference was held in August 2017 and jury selection was scheduled for January 2018. Shortly after the pretrial conference, in connection with a liquidation proceeding in South Carolina commenced in August 2017 by the South Carolina Department of Insurance against Oceanus, discussed below, the appellants moved before the Supreme Court, inter alia, to permanently stay this action based on the South Carolina order issued by the South Carolina court in that liquidation proceeding. In the order appealed from, dated April 23, 2018 (see Hala v Orange Regional Med. Ctr., 60 Misc 3d 274 [Sup Ct, Orange County]; hereinafter the April 2018 order), the Supreme Court, inter alia, denied the motion.
Thereafter, the appellants moved in this Court, inter alia, to stay all proceedings in the action pending hearing and determination of the appeal. By decision and order on motion dated June 15, 2018, this Court granted that branch of the appellants' motion.
The South Carolina Proceedings
Oceanus was formed in 2004 as a risk retention group domiciled in South Carolina and conducting business in numerous states, including New York. On August 29, 2017, the Director of the South Carolina Department of Insurance commenced liquidation proceedings against Oceanus in the South Carolina court and, on September 21, 2017, the South Carolina court issued the South Carolina order which purports to permanently stay all proceedings against both Oceanus and its policyholders, including this action and other similar actions in New York wherein defendants are policyholders of Oceanus insurance coverage. Specifically, the South Carolina order provides that Oceanus is " officially declared insolvent'" and that it is " dissolved.'" It enjoins, inter alia, " [t]he institution or further prosecution of any actions or proceedings,'" " [t]he obtaining of preferences, [*2]judgments, attachments, garnishments, or liens against the insurer, its assets, or its policyholders'" and " [t]he levying . . . of execution against the insurer, its assets, or its policyholders'" and the injunction is both " permanent'" and " applicable to all persons and proceedings'" (Hala v Orange Regional Med. Ctr., 60 Misc 3d at 277-278, quoting the South Carolina order)[FN2]. The appellants contend that the South Carolina order should be given full faith and credit by the courts in New York such that this action and the April 2018 order must be permanently stayed.
The Oceanus Cases in New York
As noted above, Oceanus is the risk retention group that provided insurance coverage to Spreitzer, Horizon, and Racanelli. Currently, there are 15 other actions pending against certain policyholders of Oceanus liability insurance coverage in the Ninth Judicial District of New York. The parties acknowledge that the South Carolina order purports to affect not only this case but also those 15 other pending cases. To ensure consistent disposition of those matters in light of Oceanus's liquidation and the South Carolina order purporting to stay actions against its policyholders, a special part was created in the Ninth Judicial District to manage matters pertaining to and arising from the South Carolina order. To the extent that the South Carolina court lacks personal jurisdiction over the plaintiffs in those pending actions, this Court's determination in this case is also applicable to those cases.
The Uniform Insurance Liquidation Act
"New York adopted the UILA in 1940 with the main purpose in mind of providing a uniform system for the orderly and equitable administration of the assets and liabilities of defunct multistate insurers'" (Matter of Levin v National Colonial Ins. Co., 1 NY3d 350, 356, quoting G. C. Murphy Co. v Reserve Ins. Co., 54 NY2d 69, 77; see Ambassador Ins. Co. v Allied Programs Corp., 165 AD2d 806, 807). A sister state that has likewise adopted the UILA is referred to as a "reciprocal state," and the state in which an insolvent insurer is incorporated or organized is referred to as the insolvent insurer's "domiciliary state" (see Insurance Law § 7408[b][4], [6]). The UILA "recognizes the authority of the domiciliary state and its receiver over all of the insolvent insurer's assets, including those located in New York" (Matter of Levin v National Colonial Ins. Co., 1 NY3d at 357; see Insurance Law § 7410[b]).[FN3]
Pursuant to both New York's and South Carolina's enactments of the UILA, a court hearing liquidation proceedings may issue orders or injunctions to prevent interference with the proceedings or dissipation of the insurer's assets (see Insurance Law § 7419[b]; SC Code Ann § 38-27-70[A][1][d]). In New York, this provision of the UILA empowers the court to enjoin the "waste of the assets of the insurer, or the commencement or prosecution of any actions, the obtaining of preferences, judgments, attachments or other liens, or the making of any levy against the insurer, its assets or any part thereof" (Insurance Law § 7419[b]; see Matter of Frontier Ins. Co., 57 AD3d 1302, 1304; Lac D'Amiante du Quebec, Ltee v American Home Assur. Co., 864 F2d 1033, 1040 [3rd Cir]). The South Carolina counterpart to New York's statute, in contrast, permits the court to enjoin proceedings not only against the insolvent insurer, but also against its policyholders (see SC Code Ann § 38-27-70[A][1][d], [f]-[h]), and the court in South Carolina exercised that authority in its order (see Hala v Orange Regional Med. Ctr., 60 Misc 3d at 278).
The UILA mandates recognition of orders issued by liquidation courts in reciprocal states (see G. C. Murphy Co. v Reserve Ins. Co., 54 NY2d at 77; Matter of Levin v National Colonial Ins. Co., 296 AD2d 354, 355, affd 1 NY3d 350; Ambassador Ins. Co. v Allied Programs Corp., 165 AD2d at 807; Insurance Law § 7410[b]). Likewise, the Full Faith and Credit Clause of the United States Constitution "requires each State to recognize and give effect to valid judgments rendered by the courts of its sister States" (V.L. v E.L., _____ US _____, _____, 136 S Ct 1017, 1020; see US Const, art IV, § 1; Matter of Luna v Dobson, 97 NY2d 178, 182).
Consistent with these mandates, courts of this State have recognized the power of courts of domiciliary states to permanently enjoin litigation against an insurer subject to liquidation proceedings (see A.J. Pegno Constr. Corp. v Highlands Ins. Co., 39 AD3d 273, 274; Matter of Levin v National Colonial Ins. Co., 296 AD2d at 355; Ambassador Ins. Co. v Allied Programs Corp., 165 AD2d at 807; G. C. Murphy Co. v Reserve Ins. Co., 74 AD2d 235, 239, mod 54 NY2d 69).
Pursuant to the Full Faith and Credit Clause, the court of one state may not disregard the judgment of a sister state "because it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits"; indeed, it may not conduct " any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based'" (V.L. v E.L., _____ US at _____, 136 S Ct at 1020, quoting Milliken v Meyer, 311 US 457, 462; see Feng Li v Peng, 161 AD3d 823, 826).
Nonetheless, a "State is not required . . . to afford full faith and credit to a judgment rendered by a court that did not have jurisdiction over the subject matter or the relevant parties'" (V.L. v E.L.,_____ US at _____, 136 S Ct at 1020, quoting Underwriters Nat. Assurance Co. v North Carolina Life & Accident & Health Ins. Guaranty Assn., 455 US 691, 705). An inquiry into jurisdiction includes considerations of due process (see Fiore v Oakwood Plaza Shopping Ctr., 78 NY2d 572, 577; Feng Li v Peng, 161 AD3d at 826). As noted below, the lack of personal jurisdiction of the South Carolina court over the plaintiffs is undisputed and is dispositive to this [*3]Court's determination herein.[FN4]
The April 2018 Order
In its April 2018 order, inter alia, denying the defendants' motion to permanently stay this action, the Supreme Court noted that, in order to honor the stay provisions of the South Carolina order, the South Carolina order must be recognized by New York pursuant to the UILA, which has been adopted by both New York (see Insurance Law § 7408 et seq.) and South Carolina (see SC Code Ann § 38-27-10 et seq.), the Full Faith and Credit Clause of the United States Constitution (see US Const, art IV, § 1; see also Hala v Orange Regional Med. Ctr., 60 Misc 3d at 280-281), and the principles of interstate comity (see e.g. Morrison v Budget Rent A Car Sys., 230 AD2d 253, 265; Century Indem. Co. v Brooklyn Union Gas Co., 2003 WL 25788108 [Sup Ct, NY County]). The Supreme Court concluded, inter alia, that Oceanus, as a risk retention group, is not an insurance company entitled to the protections of the UILA, and that the South Carolina court lacked personal jurisdiction over the New York plaintiffs. Accordingly, the Supreme Court denied the defendants' motion seeking to permanently enjoin the plaintiffs from prosecuting their case in New York (see Hala v Orange Regional Med. Ctr., 60 Misc 3d at 285).
Due Process and Personal Jurisdiction
In 1980, the United States Supreme Court, in two companion decisions, World-Wide Volkswagen Corp. v Woodson (444 US 286, 291) and Rush v Savchuk (444 US 320, 330-331), articulated its modern view of the limits of a State's judicial jurisdictional power and declared unconstitutional prior New York State jurisprudence on the issue (and the jurisprudence of other states to the extent they mirrored New York's approach [FN5] [see e.g. Seider v Roth, 17 NY2d 111 (overturned)]) as violative of due process (see Rush v Savchuk, 444 US at 332-333; World-Wide Volkswagen Corp. v Woodson, 444 US at 295). Specifically, the United States Supreme Court held that " all assertions of state-court jurisdiction must be evaluated according to the standards set forth in [International Shoe Co. v Washington (326 US 310, 316)] and its progeny'" (Rush v Savchuk, 444 US at 327, quoting Shaffer v Heitner, 433 US 186, 204; see World-Wide Volkswagen Corp. v Woodson, 444 US at 291). "That is, a State may exercise jurisdiction over an absent defendant only if the defendant has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice'" (Rush v Savchuk, 444 US at 327, quoting International Shoe Co. v Washington, 326 US at 316; see World-Wide Volkswagen Corp. v Woodson, 444 US at 295).
Prior New York Jurisprudence
The arguments by the defendants about the scope and reach of the South Carolina court through its South Carolina order necessitate a brief review of Seider v Roth (17 NY2d 111), which is the case that established New York precedent on the issue of personal jurisdiction until it was expressly overturned by the United States Supreme Court in World-Wide Volkswagen Corp. v Woodson (444 US at 291) and Rush v Savchuk (444 US at 330-331).
The Court of Appeals decided Seider v Roth in 1966, holding that New York could exercise jurisdiction over a defendant through quasi in rem jurisdiction even though the defendant's only contact with New York was the contractual obligation of the defendant's insurance company (licensed to do business in New York) to defend and indemnify the defendant in connection with the lawsuit (see Seider v Roth, 17 NY2d 111). In 1978, in O'Connor v Lee-Hy Paving Corp. (579 F2d 194 [2d Cir]), the United States Court of Appeals for the Second Circuit effectively reaffirmed the jurisdictional principles articulated in Seider. In O'Connor, the Second Circuit determined that New York's exercise of jurisdiction in Seider was not violative of due process because Seider, in effect, treated an insurer doing business in New York as the "real party in interest" and the nonresident insured defendant was simply a conduit who was named as a defendant in order to provide a conceptual basis to obtain jurisdiction over the insurer (Minichiello v Rosenberg, 410 F2d 106, 109 [attributing the insurer's forum contacts to the defendant by treating the attachment procedure as the functional equivalent of a direct action against the insured and considering the insured a "nominal [*4]defendant" to obtain jurisdiction over the insurer]).
In Rush, the United States Supreme Court debunked that concept as violative of the Constitution of the United States and held that the cognizable legal fictions upon which Seider relied to exercise jurisdiction over the defendant—to wit, that debt, as a form of property partakes of the situs of the debtor, and a corporation is to be found wherever it does business—fell short of due process when no more was present in the forum than the liability insurer of the alleged tortfeasor and its obligation to defend and indemnify (see Rush v Savchuck, 444 US at 331-333 [although the parties' relationships with each other may be significant in evaluating their ties to the forum, the requirements of International Shoe must be met as to each defendant over whom a state court exercises jurisdiction]; see also Gager v White, 53 NY2d 475, 486).
Current Law on Personal Jurisdiction
"In determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on the relationship among the [party], the forum, and the litigation'" (Rush v Savchuk, 444 US at 327, quoting Shaffer v Heitner, 433 US at 204). As is relevant to the issues here, the components of personal jurisdiction are the "service of process, which implicates due process requirements of notice and opportunity to be heard," and "the power, or reach, of a court over a party, so as to enforce judicial decrees" (Keane v Kamin, 94 NY2d 263, 265). "A court has no power to grant relief against an entity not named as a party and not properly summoned before the court" (Riverside Capital Advisors, Inc. v First Secured Capital Corp., 28 AD3d 457, 460; see Ebsary Gypsum Co. v Ruby, 256 NY 406, 411; Charles H. Greenthal & Co. v 301 E. 21st St. Tenants' Assn., 91 AD2d 934, 935). At a minimum, to satisfy the jurisdictional basis of a court's power over a party, independent of service of process, "there must be a constitutionally adequate connection between the defendant, the State and the action" (Keane v Kamin, 94 NY2d at 265; see Burger King Corp. v Rudezwicz, 471 US 462, 465; World-Wide Volkswagen Corp. v Woodson, 444 US at 291; International Shoe Co. v Washington, 326 US at 315-316).
The Court of Appeals, in the aftermath of World-Wide Volkswagen Corp. v Woodson (444 US at 291) and Rush v Savchuk (444 US at 330-331), revisited its jurisprudence on the issue of personal jurisdiction and, as is relevant to this case, emphasized the United States Supreme Court's holding in World-Wide Volkswagen that " [a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere'" (Gager v White, 53 NY2d at 487, quoting World-Wide Volkswagen Corp. v Woodson, 444 US at 291; see also 4 Carmody-Wait 2d, NY Prac, § 25:3 at 4).
South Carolina Lacks Personal Jurisdiction over the Plaintiffs
Here, Oceanus is not a party to this action or to the 15 other actions pending in the Ninth Judicial District. More importantly, the plaintiffs here and the plaintiffs in those other pending actions were not and likely could not be named as parties in the South Carolina liquidation proceeding, were given no notice of those proceedings, and were given no opportunity to be heard regarding the injunction which purports to permanently enjoin them from litigating their case in New York. Indeed, the defendants, who, as the parties asserting personal jurisdiction, have the burden of proof on that issue (see Leuthner v Homewood Suites by Hilton, 151 AD3d 1042, 1043; Castillo v Star Leasing Co., 69 AD3d 551, 551; Ying Jun Chen v Lei Shi, 19 AD3d 407, 407), have not pointed to any connection between the State of South Carolina and the plaintiffs or the plaintiffs' medical malpractice claims.
Although the defendants correctly posit that, pursuant to UILA, South Carolina, as Oceanus's domiciliary state, has authority over Oceanus's assets, they importune this Court to ignore the fact that Oceanus is not a party to this action and that South Carolina cannot exercise personal jurisdiction over the plaintiffs. Instead, the defendants contend that the South Carolina Department of Insurance can serve in a parens patriae capacity representing the interests of those individuals, such as the plaintiffs, who cannot be brought into the South Carolina court through traditional notions of personal jurisdiction. We reject their contention that a liquidation procedure wherein Oceanus policyholders and persons such as the plaintiffs here with claims against the policyholders [*5]could file proof of their claims within the context of the liquidation proceedings [FN6] somehow comports with the traditional notions of fair play and substantial justice inherent in the requirements of due process (see Wright v Sullivan Payne Co., 839 SW2d 250, 255 [Ky]).
We also reject the defendants' contention that the goal of UILA—to provide a uniform method for processing claims against and distributing the assets of distressed insurance companies with assets and policyholders in multiple jurisdictions in the United States [FN7] (see Insurance Law § 7415)—and the need for reciprocal recognition of the UILA among the states compels the conclusion that, on balance, the requirement of personal jurisdiction is subordinate to these goals.
As an initial matter, the language of the South Carolina order that gives rise to this immediate dispute is not language that mirrors New York's UILA. Rather, it is the South Carolina court's extension of its power to purport to stay proceedings against Oceanus policyholders—those individuals whose only connection with the State of South Carolina may be that they purchased this insurance liability coverage from Oceanus, a company with its situs there—that frames the dispute before this Court. The issue is strikingly similar to the Seider analysis evaluated and rejected by the United States Supreme Court in World-Wide Volkswagen Corp. v Woodson (444 US at 291) and Rush v Savchuk (444 US at 330-331). More significantly, even if the reciprocal adoption of comparable provisions of the UILA by New York and South Carolina could address the issue that South Carolina's reach can extend to policyholders of Oceanus's insurance coverage, such analysis would reach only to those claims of the policyholders and not to those claims of the plaintiffs here, who have asserted claims not against Oceanus but rather against defendants who are policyholders of Oceanus insurance.
To hold that the South Carolina order can extend to the plaintiffs' claims would violate their right to due process and place on them an undue burden. They would face having to either litigate their medical malpractice causes of action within the context of a liquidation proceeding in South Carolina or be forever barred from seeking redress for the alleged wrongs committed by the defendants. In contrast, a refusal to afford full faith and credit to the South Carolina order means, as a practical matter, that the defendants Speitzer and Horizon absorb, at least initially, the cost of defending themselves in this New York litigation. Such a result is more appropriate than precluding the plaintiffs from pursuing their claims, as those defendants have the option of turning to the court in South Carolina to seek redress for some or all of such costs they may expend in defense of themselves and for any monetary award against them. Indeed, since the defendants have argued that risk retention groups were enacted for "the salutary purpose of decreasing insurance rates and increasing the availability of coverage" (citing Preferred Physician Mut Risk Retention Group v Pataki, 85 F3d 913, 914 [2d Cir]), as a matter of public policy, the parties who sought out that less expensive but more available coverage are the entities that should bear the primary risk of not being made whole—not the plaintiffs who had no role in the selection of the defendants' insurance coverage (see Caimares v Erickson, 173 AD3d 417).[FN8]
The defendants' contention that the UILA creates a special exception to the requirements of due process and personal jurisdiction for insurance liquidation proceedings is without merit (see id.). We join the courts of Indiana and Kentucky in rejecting this attempt to "carve a special exception into due process jurisprudence for state-regulated insurance rehabilitation proceedings" (Mahan v Gunther, 278 Ill App 3d 1108, 1112; see Wright v Sullivan Payne Co., 839 SW2d at 254). As noted by the Kentucky Supreme Court, the UILA cannot confer "jurisdiction without contacts" and jurisdiction cannot "be extended beyond due process limits" (Wright v Sullivan Payne Co., 839 SW2d at 255). "The United States Constitution's due process clause . . . was not adopted to further the convenience of the states but was adopted to ensure that no state [*6]would attempt to enter a binding judgment against a party with whom the state has no contacts, relations, or ties" (Mahan v Gunther, 278 Ill App 3d at 1112).
"[A] court has power to protect its jurisdiction and to prevent devices which will have the purpose alone of frustrating a final determination" (Matter of Ohrbach v Kirkeby, 3 AD2d 269, 272). Thus, we decline to recognize the South Carolina order to the extent that it attempts to prohibit the courts of New York from trying and resolving actions over which these courts have proper jurisdiction (see Mahan v Gunther, 278 Ill App 3d at 1116-1117; Fuhrman v United America Insurors, 269 NW2d 842, 847 [Minn]), and South Carolina does not.
Prior Case Law is Inapposite
The Fourth Department's decision in Beecher v Lewis Press Co. (238 AD2d 927) and this Court's decision in Dambrot v REJ Long Beach, LLC (39 AD3d 797), are inapposite and do not dictate a contrary result. In Beecher, the Fourth Department recognized a Rhode Island order that temporarily stayed actions against policyholders of an insolvent insurer. In Dambrot, the question presented to this Court was not whether a permanent stay of an action against a policyholder of an insolvent insurer would be recognized in New York, but rather whether the Supreme Court had erred in ruling on a motion without permitting the appellant to file opposition papers and at a time when a Pennsylvania court had stayed actions against policyholders of an insurer subject to liquidation proceedings in that state (see Dambrot v REJ Long Beach, LLC, 39 AD3d at 799). Thus, the question before this Court in this case was neither posed nor answered in Beecher or Dambrot.
Indeed, the decisions in Beecher and Dambrot underscore the key distinction between those cases and this one. Although the jurisprudence of this State, the public policy expressed in New York's adoption of the UILA, and the principles of comity could, in the case of a temporary order of another state, weigh in favor of recognition and enforcement of such order by this Court (see Beecher v Lewis Press Co., 238 AD2d at 927-928), no such result occurs with respect to the South Carolina order at issue here, since it purports to permanently enjoin the plaintiffs' ability to prosecute their claims.
Principles of Comity Do Not Yield a Different Conclusion
The lack of personal jurisdiction of the South Carolina court over the plaintiffs is also the reason to deny recognition of the South Carolina order on the basis of interstate comity. Comity " does not of its own force compel a particular course of action. Rather, it is an expression of one State's entirely voluntary decision to defer to the policy of another'" (Debra H. v Janice R., 14 NY3d 576, 600, abrogated on other grounds by Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d 1, quoting Ehrlich-Bober & Co. v University of Houston, 49 NY2d 574, 580; see Boudreaux v State of La., Dept. of Transp., 11 NY3d 321, 326).
Although New York's adoption of the UILA embodies this State's public policy in favor of " providing a uniform system for the orderly and equitable administration of the assets and liabilities of defunct multistate insurers'" (Matter of Levin v National Colonial Ins. Co., 1 NY3d at 356, quoting G. C. Murphy Co. v Reserve Ins. Co., 54 NY2d at 77), and affording comity to the South Carolina order may " encourag[e] harmony among participants in a system of co-operative federalism'" (Debra H. v Janice R., 14 NY3d at 600, quoting Ehrlich-Bober & Co. v University of Houston, 49 NY2d at 580), comity will not yield to the acts of other states where doing so would " do violence to some strong public policy of this State'" (Sung Hwan Co., Ltd. v Rite Aid Corp., 7 NY3d 78, 82, quoting Greschler v Greschler, 51 NY2d 368, 376; see Intercontinental Hotels Corp. [Puerto Rico] v Golden, 15 NY2d 9, 13). Since the South Carolina order purports to permanently enjoin the plaintiffs' ability to prosecute their claims in New York, it is in stark conflict with New York's public policy of protecting tort victims and mandating free access to the courts for the redress of wrongs and protecting the plaintiffs' due process rights (see Board of Educ. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d 397, 404; Matter of Marion C.W. [Lisa K.], 135 AD3d 777, 779; Dimery v Ulster Sav. Bank, 82 AD3d 1034, 1035; Deshpande v Medisys Health Network, Inc., 70 AD3d 760, 763; see also Caimares v Erickson, 173 AD3d 417). Affording comity to the South Carolina order would deprive the plaintiffs of their ability to seek redress in courts in New York, despite the fact that they had no say in the selection of Oceanus as the defendants' insurer and simply because the defendants chose a South Carolina risk retention group as their insurer. Where an insurer such as Oceanus fails, the risks and consequences of that failed coverage are more properly borne by the defendants who chose such insurer, rather than the plaintiffs who had no say in that choice. Accordingly, the same reasons that preclude recognition of the South Carolina order under the principles of full faith and credit also preclude extending comity to it.
In light of the foregoing, we need not reach the parties' remaining contentions.
Accordingly, the order dated April 23, 2018, is affirmed insofar as appealed from.
MASTRO, J.P., LASALLE and IANNACCI, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER: Aprilanne Agostino Clerk of the Court



Footnotes

Footnote 1: The defendants Racanelli and Orange separately filed notices of appeal with respect to the Supreme Court's summary judgment order. Those matters remain pending in this Court.

Footnote 2: In an order dated February 8, 2018, the South Carolina court issued a "clarification order" expressly confirming that the South Carolina order contains an automatic stay permanently enjoining the institution of any actions or prosecution of further proceedings against policyholders, covered providers, and additional named insureds of Oceanus (see Hala v Orange Regional Med. Ctr., 60 Misc 3d at 278-279).

Footnote 3: The First Department recently determined that risk retention groups, unlike traditional insurance companies, are outside the ambit of the UILA (see Caimares v Erickson, 173 AD3d 417; Givens v Kingsbridge Hgts. Care Ctr., Inc., 171 AD3d 569, 570), and, in this case, the Supreme Court determined that Oceanus, as a risk retention group, is not an insurance company for the purposes of the UILA (see Hala v Orange Regional Med. Ctr., 60 Misc 3d at 282-283). We also note that Insurance Law § 5906 indicates that risk retention groups cannot be licensed or chartered in New York and, among other things, in effect, treats risk retention groups as outside the ambit of the UILA. Notably, Insurance Law § 5906 precludes risk retention groups from participating in medical malpractice insurance in New York. In contrast, courts in both South Carolina and Montana have determined that risk retention groups situated in those respective states fall within the ambit and protection of the respective UILA in each of those states (see e.g. Givens v Kingsbridge Hgts. Care Ctr., Inc., 171 AD3d at 570; Hala v Orange Regional Med. Ctr., 60 Misc 3d at 276). Here, South Carolina's version of the UILA, not the New York UILA, is at issue. Accordingly, to the extent that we are asked to extend full faith and credit to the South Carolina order, which treats Oceanus, a risk retention group, as protected by the provisions of South Carolina's UILA, for the purposes of determining this appeal, we do not treat Oceanus as outside the protection of the South Carolina UILA and, instead, decide the appeal on the principles of full faith and credit, and comity (see Hala v Orange Regional Med. Ctr., 60 Misc 3d at 276; 15 USC § 3901[a][4][C][i]; Insurance Law § 5902[n]; 5904 et seq.).The Court of Appeals' recent determination in Nadkos, Inc. v Preferred Contrs. Ins. Co. Risk Retention Group LLC (_____ NY3d _____, 2019 NY Slip Op 04641 [2019]) that the timely disclaimer requirements of New York Insurance Law § 3420(d)(2) are inapplicable to a nondomiciliary risk retention group charted in Montana and doing business in New York also does not frame the issues decided herein. In Nadkos, the Court noted that New York's Legislature promulgated article 59 of New York's Insurance Law " to regulate the formation and/or operation in this state of risk retention groups' (Insurance Law § 5901)" and that nondomiciliary risk retention groups doing business in New York comply with provisions set forth in section 2601 and any regulations promulgated thereunder (Nadkos, Inc. v Preferred Contrs. Ins. Co. Risk Retention Group LLC, _____ NY3d at _____, 2019 NY Slip Op 04641, *3). The Court of Appeals expressly noted that its determination in Nadkos does "not decide the outer limits of our state's regulation of nondomiciliary RRGs" (_____ NY3d at _____ n 4, 2019 NY Slip Op 04641, *3 n 4). Here, this appeal does not reach the issue of the applicability of any particular provision of New York Insurance Law to Oceanus and the other nondomiciliary risk retention groups that provided medical malpractice insurance coverage to the defendants in this and the related actions. Instead, this appeal addresses the question of whether, assuming that Oceanus (as representative of the other risk retention groups in the related actions) falls within the ambit of South Carolina's UILA, full faith and credit and/or comity should be afforded to the South Carolina order.

Footnote 4: The appellants do not contend that South Carolina could exercise personal jurisdiction over Orange.

Footnote 5: The States of Minnesota and New Hampshire adhered to the rationale articulated in Seider until it was overturned by the United States Supreme Court in 1979 in World-Wide Volkswagen Corp. v Woodson (444 US 286, 291) and Rush v Savchuk (444 US 320, 325-326).

Footnote 6: The defendants contend that such claims then would be paid in a manner similar to the payment of claims against a debtor in bankruptcy.

Footnote 7: In fact, allowing the plaintiffs to proceed on their causes of action in New York will have no practical effect on the priority of judgment creditors in the Oceanus liquidation.

Footnote 8: To the extent that the plaintiffs, if successful in their action, would have to look beyond the defendants to Oceanus to obtain payment of any damages, they already could be negatively impacted by the liquidation of Oceanus.